**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**July 7, 2026**

_____

**Christopher M. Wolpert**
**Clerk of Court**

THOMAS HOFFMAN; JOSEPH
STRONG; VINCENT SHIBLER; DAVID
SHIBLER; CITY OF ROSSVILLE,
KANSAS,

      Plaintiffs - Appellants,

v.

UNITED STATES DEPARTMENT OF
TREASURY; COUNCIL ON
ENVIRONMENTAL QUALITY; SCOTT
BESSENT, in his official capacity as
United States Department of Treasury,
Secretary, and as the Senior Official
Performing Duties as Commissioner of
Internal Revenue Service; JOHN YORK,
Assistant Secretary for Management of the
United States Treasury, in his official
capacity; CHIEF IMPLEMENTATION
OFFICER FOR THE INFLATION
REDUCTION ACT; KENNETH KIES, in
his official capacity as Assistant Secretary
for Tax Policy at Treasury; KATHERINE
SCARLETT, in her official capacity as
Chair of the Council on Environmental
Quality,

      Defendants - Appellees,[*]

No. 25-3131
(D.C. No. 5:25-CV-04003-HLT-BGS)
(D. Kan.)

_____

[*]      Pursuant to Federal Rule of Appellate Procedure 43(c)(2), the Senior
Official Performing Duties as Commissioner of Internal Revenue Service, Scott
Bessent, is automatically substituted for former Commissioner of Internal Revenue
Service, Melanie Krause.  The current Assistant Secretary for Management of the
United States Treasury, John York, is automatically substituted for former Acting
Assistant Secretary for Management, William Sessions.  The current Assistant
Secretary for Tax Policy at Treasury, Kenneth Kies, is automatically substituted for
former Assistant Secretary for Tax Policy at Treasury, Shelley Leonard.

JEFFREY SOLAR, LLC,

       Intervenor Defendant - Appellee,

and

KEITH KELLY; MARK A. PRUETT;
LINDA GERHARDT,

       Defendants.

_____

**ORDER AND JUDGMENT**[**]

_____

Before **HOLMES**, Chief Judge, **TYMKOVICH**, and **MORITZ**, Circuit Judges.

_____

Four landowners in Jackson County, Kansas, along with the neighboring City of

Rossville, Kansas (collectively, the "Landowners"), filed suit against the United States

Department of Treasury ("Treasury") and various officials within that agency

(collectively, the "Federal Defendants").  They alleged that the Federal Defendants

violated the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4332–4370,

by failing to require NEPA compliance in the regulations that Treasury issued

regarding the Inflation Reduction Act of 2022 ("IRA" or "the Act").  *See* Pub. L. No.

117-169, 136 Stat. 1818 (2022).  The district court dismissed the suit under Federal Rule

---

[**]      After examining the briefs and appellate record, this panel has
determined unanimously that oral argument would not materially assist in the
determination of this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The
case is therefore ordered submitted without oral argument.  This order and judgment
is not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel.  It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

of Civil Procedure 12(b)(1) for lack of jurisdiction and, alternatively, under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. We conclude that the Landowners do not have standing because they have not established that they suffered an injury in fact under NEPA. Thus, we affirm the district court's judgment.

## I

On August 16, 2022, President Joe Biden signed the IRA into law. 136 Stat. 1818. "The Act incentivizes renewable energy projects through two tax-credit programs: the Investment Tax Credit ('ITC') and the Production Tax Credit ('PTC')." Aplts.' App., Vol. I, at 36 (First Am. Compl., filed Feb. 20, 2025); *see also* 26 U.S.C. §§ 45Y, 48E. "The ITC is a dollar-for-dollar tax credit based on the capital costs of new renewable energy projects." Aplts.' App., Vol. I, at 36. If renewable projects meet certain base-line requirements, "the ITC covers 30% of the capital costs of new solar and wind energy projects." *Id.* If a renewable project meets additional requirements, "solar and wind producers can recoup up to 70% of their capital costs through the ITC." *Id.* at 37.

"The PTC provides for a tax credit for renewable electricity production." *Id.* "Recipients can use the PTC or the ITC (but not both simultaneously) for eligible renewable projects." *Id.* at 36. "Through transferability, renewable energy companies that do not generate sufficient profit to absorb the tax credits can sell the credits to other companies," and those proceeds "are considered tax-free income." *Id.* at 37.

With respect to these credits, the IRA stated that the Secretary of Treasury "shall issue such regulations or other guidance as may be necessary to carry out the purposes of" the legislation. 136 Stat. 1818, 2009; *id.* at 2008 ("[T]he Secretary may require such

3

information or registration as the Secretary deems necessary for purposes of preventing duplication, fraud, improper payments, or excessive payments under this section."); *id.* at 2011 ("The Secretary shall issue such regulations or other guidance as may be necessary to carry out the purposes of this section . . . ."). Accordingly, Treasury issued final rules and regulations on a variety of topics such as the transferability of ITCs and PTCs, the scope of energy property investments, and eligibility for technology-neutral ITCs and PTCs. *See, e.g.*, Transfer of Certain Credits, 89 Fed. Reg. 34770-01 (Apr. 30, 2024); Increased Amounts of Credit or Deduction for Satisfying Certain Prevailing Wage and Registered Apprenticeship Requirements, 89 Fed. Reg. 53184-01 (June 25, 2024); Definition of Energy Property and Rules Applicable to the Energy Credit, 89 Fed. Reg. 100598-01 (Dec. 12, 2024). None of these regulations referenced NEPA or required NEPA compliance.

The IRA "spurred substantial new investments in wind and solar projects." Aplts.' App., Vol. I, at 39. One such project was "the industrial Jeffrey Solar project," named after its developer, Jeffrey Solar, LLC. *Id.* at 13–14. NextEra Energy—the parent company of Jeffrey Solar and "the world's largest producer of industrial wind and solar projects"—intended to build "a massive industrial solar energy project in Jackson County, Kansas." *Id.* at 16, 47. So, after the IRA was enacted, NextEra sent a letter to the Jackson County Board of County Commissioners stating it "was interested in developing an industrial solar project in Jackson County, Kansas." *Id.* at 46. NextEra also "acquired leases for its vast solar project." *Id.* at 16. These leases were for land in Jackson County.

4

Four landowners in Jackson County—Thomas Hoffman, Joseph Strong, Vincent Shibler, and David Shibler—and the City of Rossville, Kansas[1] filed suit against Treasury, the United States Treasury Secretary, the Acting Assistant Secretary of the Treasury for Management, the Chief Implementation Officer for the IRA, the Assistant Secretary for Tax Policy at Treasury, the Commissioner of the Internal Revenue Service, the Council on Environmental Quality ("CEQ"), and the Chair of CEQ. The Landowners also sued the Chair of the Jackson County Board of County Commissioners and two members of that Board (collectively, "County Defendants").[2]

The Landowners alleged that the Federal Defendants violated the Administrative Procedure Act, 5 U.S.C. § 706, and NEPA. They also alleged the County Defendants violated Kan. Stat. Ann. § 19-2964 (permitting those with "an interest in property affected" by certain land-use actions to seek an assessment of their "reasonableness" "by bringing an action against the board of county commissioners"). The Landowners filed a motion for a preliminary injunction.

Jeffrey Solar filed a motion to intervene which the district court granted. The Federal Defendants and Jeffrey Solar filed motions to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). In their motions, they argued the Landowners "fail[ed] to adequately allege any element necessary to establish Article III standing."

---

[1] "The City of Rossville, Kansas [] is in Shawnee County, Kansas—immediately adjacent to Jackson County—on the banks of Cross Creek." *Id.* at 28.

[2] The claims against the County Defendants are not at issue in this appeal.

Aplts.' App., Vol. I, at 181 (Fed. Aplees.' Mot. to Dismiss, filed Apr. 11, 2025); *see id.* at 213–15 (Jeffrey Solar's Mot. to Dismiss, filed Apr. 11, 2025). Alternatively, they argued the Landowners failed to state a NEPA claim.

The district court granted the motions to dismiss. It held that the Landowners "lack[ed] standing because there [was] a mismatch between their environmental concerns tied to construction of the Jeffrey Solar Project and the tax credits and regulations." Aplts.' App., Vol. III, at 253 (Mem. and Order, filed July 1, 2025). In analyzing the elements of standing, the district court said that "[t]he core problem" with the Landowners' injury-in-fact argument was that they "fail[ed] to identify an agency action that increased their risk of environmental harm." *Id.* at 259.

For traceability, the district court determined that "NEPA's informed decision-making requirement refers to an agency's duty to gather and assess information about the environmental impact of a decision before it is made," but the Landowners' "theory instead would only require NEPA inquiries at some point, with respect to some project, neither of which is yet identified." *Id.* at 260 (underlining omitted). For redressability, the district court explained that "[w]hatever the increased risks of environmental harm [the Landowners] might ultimately face from the project's construction and operation and whatever effect IRA tax credits might have on that risk, enjoining the regulations will have no remedial effect. The tax credits will remain available." *Id.* at 260–61.

Thus, the district court held that the Landowners "fail[ed] to establish any of the requirements for standing." *Id.* at 261. Alternatively, the district court determined that, "even if [it] had jurisdiction, [the Landowners] still fail[ed] to allege a plausible claim."

6

*Id.* It based this conclusion on the Landowners' failure to "establish there [was] a 'major federal action'" under NEPA. *Id.* (quoting 42 U.S.C. § 4336e(10)(A)).

Even though the County Defendants did not file a motion to dismiss, the district court held that the Landowners also lacked standing to bring their claims against the County Defendants.[3] So the district court dismissed all the Landowners' claims without prejudice and denied the motion for a preliminary injunction as moot. The Landowners appealed.

## II

"Because standing is a question of law for the court to determine, we review the district court's determination of standing *de novo*." *Comm. to Save the Rio Hondo v. Lucero*, 102 F.3d 445, 447 (10th Cir. 1996). "A Rule 12(b)(1) motion 'to dismiss for lack of subject matter jurisdiction take[s] two forms:' either a 'facial' or a 'factual' attack." *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1148 n.4 (10th Cir. 2015) (alteration in original) (quoting *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995)). Because the district court did not consider "evidence outside [the Landowners'] amended complaint," it "resolve[d] the Rule 12(b)(1) challenges as facial attacks." Aplts.' App., Vol. III, at 257 n.4. In reviewing such challenges to "the sufficiency of the complaint," we "accept the allegations in the complaint as true." *Pueblo of Jemez*, 790 F.3d at 1148 n.4 (quoting *Holt*, 46 F.3d at 1002); *see Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1227 (10th Cir. 2010).

---

[3] This ruling was not appealed by the Landowners.

## A

The Landowners argue they "adequately alleged all three elements of constitutional standing: injury in fact, traceability, and redressability." Aplts.' Opening Br. at 10. First, they contend they were injured since "the Federal Defendants did not incorporate any NEPA review procedures as a precondition for claiming or transferring IRA tax credits," and it is "well-established that the failure to follow NEPA's review procedures, in and of itself, constitutes an increased risk of environmental harm." *Id.* at 10–11. In other words, their injury is "the construction of the Jeffrey Solar project without any NEPA review." *Id.* at 25. Second, the Landowners argue they satisfy causation since "the reason the Jeffrey Solar project is moving forward without NEPA review is because the Federal Defendants' final regulations implementing the IRA do not require it." *Id.* Third, the Landowners explain that, in terms of relief, they are requesting "an order for the Federal Defendants to adopt IRA regulations requiring procedural compliance with NEPA as a precondition for claiming or transferring IRA tax credits for industrial solar projects" which, if granted, "will redress the injury at issue." *Id.* at 27.

The Federal Defendants argue the Landowners "fail to allege facts beyond mere speculation about their risk of future injury" since their "allegations make clear both that Treasury has nothing to do with the project planning and has no approval authority over the project here, and that the project's planning is in its early stages." Fed. Aplees.' Resp. Br. at 16–17. They next assert that, for traceability, "[t]he problem here is that [the Landowners] allege no federal decision whatsoever that would be informed by the NEPA review they propose. After all, [the Landowners] assert that Treasury should have

8

required in its regulations that private taxpayers conduct NEPA review in the future." *Id.* at 17. "For the same reason, ordering the relief [the Landowners] request would not prevent uninformed agency decision[-]making, so it would not redress [the Landowners'] injury." *Id.* at 18.

Jeffrey Solar argues the Landowners "have not established a judicially cognizable risk of environmental harm" since the "diminished use and enjoyment of their land if the Jeffrey Solar Project is ultimately built. . . . is too speculative and remote to confer Article III standing." Aplee.'s Resp. Br. at 16. It maintains the Landowners "cannot establish traceability or redressability[] either" because they "failed to plausibly allege that the regulations Federal Defendants promulgated had any effect on the Jeffrey Solar Project and, by extension, any effect on [the Landowners'] environment." *Id.* at 16–17 (emphasis omitted). "The only potentially relevant agency action that would trigger NEPA is Federal Defendants' reviewing and honoring of claimed IRA tax credits. But that would only occur after the Jeffrey Solar Project is already constructed and operational." *Id.* at 17.

**B**

"The doctrine of standing 'is an essential and unchanging part of the case-or-controversy requirement of Article III.'" *Lucero*, 102 F.3d at 447 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "To establish standing, a plaintiff must show '(1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative,

9

that the injury will be redressed by a favorable decision.'" *Rocky Mountain Wild v. Dallas*, 98 F.4th 1263, 1286 (10th Cir. 2024) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)). "The plaintiff 'bear[s] the burden of establishing standing . . . .'" *Rocky Mountain Peace & Just. Ctr. v. U.S. Fish & Wildlife Serv.*, 40 F.4th 1133, 1151 (10th Cir. 2022) (alteration in original) (quoting *Colo. Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 544 (10th Cir. 2016)).

"The injury-in-fact prong of our standing analysis 'breaks down into two parts.'" *Diné Citizens Against Ruining Our Env't v. Bernhardt*, 923 F.3d 831, 840 (10th Cir. 2019) (quoting *Lucero*, 102 F.3d at 449). "To establish an injury-in-fact from failure to perform a NEPA analysis, a litigant must show: 1) that in making its decision without following the NEPA's procedures, the agency created an increased risk of actual, threatened or imminent environmental harm; and 2) that this increased risk of environmental harm injures its concrete interest." *Sierra Club v. U.S. Dep't of Energy*, 287 F.3d 1256, 1265 (10th Cir. 2002).

"In a NEPA challenge, '[t]o establish causation, a plaintiff need only show its increased risk is fairly traceable to the agency's failure to comply with [NEPA]' and the agency's resulting 'uninformed decisionmaking.'" *WildEarth Guardians v. U.S. Bureau of Land Mgmt.*, 870 F.3d 1222, 1231 (10th Cir. 2017) (alterations in original) (quoting *Lucero*, 102 F.3d at 451–52). "When a plaintiff alleges a procedural violation," as in NEPA cases, "we relax the redressability requirements." *Rocky Mountain Peace & Just. Ctr.*, 40 F.4th at 1154. "Under NEPA, 'a plaintiff need not establish that the ultimate agency decision would change upon [NEPA] compliance. Rather, the [Plaintiff must

10

only show] that its injury would be redressed by a favorable decision requiring'

compliance with NEPA procedures." *Diné Citizens*, 923 F.3d at 844 (alterations in

original) (quoting *Lucero*, 102 F.3d at 452).

**C**

Here, we conclude that the Landowners have failed to establish standing because

they have not shown an injury in fact. Accordingly, we uphold the district court's

judgment.

Specifically, the Landowners' alleged injury is Treasury's failure to require NEPA

compliance in its regulations as a condition for claiming or transferring IRA tax credits.

But this is not an injury in fact we have recognized in the NEPA context.[4] *See Lucero*,

---

[4] On appeal, for the injury-in-fact analysis, the Landowners advocate for "the *Lucero* test." Aplts.' Opening Br. at 16; *see Lucero*, 102 F.3d at 449 ("[T]he injury in fact prong of the standing test of Article III breaks down into two parts: (1) the litigant must show that in making its decision without following [NEPA's] procedures, the agency created an increased risk of actual, threatened, or imminent environmental harm; and (2) the litigant must show that the increased risk of environmental harm injures its concrete interests by demonstrating either its geographical nexus to, or actual use of the site of the agency action."). This is the test we use when a litigant seeks "[t]o establish an injury-in-fact from failure to perform a NEPA analysis." *Sierra Club*, 287 F.3d at 1265. The precise injury alleged here by the Landowners is the Federal Defendants' failure to "incorporate any NEPA review procedures as a precondition for claiming or transferring IRA tax credits." Aplts.' Opening Br. at 10–11. This alleged injury flows from Treasury's promulgation of regulations, an action that is in a sense "upstream" of the kind of agency action generally contemplated by *Lucero*, i.e., an action that is (allegedly) subject to NEPA review. Therefore, it may be that the *Lucero* test is not a perfect fit for the Landowners' injury-in-fact analysis. But even if there were an analytical mismatch between the two, we would proceed under *Lucero* because of our party presentation principle and, in particular, because the Landowners, the parties with the burden of establishing standing, embrace it. *See Murthy v. Missouri*, 603 U.S. 43, 58 (2024) ("The plaintiff 'bears the burden of establishing standing[.]'" (quoting *Carney v. Adams*, 592 U.S. 53, 59 (2020))); *Greenlaw v. United States*, 554 U.S. 237, 243

102 F.3d at 449 ("[T]o establish injury in fact for purposes of Article III, a plaintiff must . . . show that the agency's disregard of a procedural requirement results in an increased risk of environmental harm . . . .").  The Landowners do not identify any NEPA procedural requirement that the Federal Defendants failed to follow.  For instance, they do not allege the Federal Defendants violated NEPA by failing to conduct an environmental impact study ("EIS") or environmental assessment ("EA").  They point to no agency decision that was uniformed due to the lack of EIS or EA.  Instead, they allege the Federal Defendants failed to mandate NEPA compliance.  *See* Aplts.' App., Vol. I, at 46 ("Defendants have not mandated an EIS or EA, nor have they found that a categorical exclusion applies to the provision of the IRA tax credits pursuant to their final actions.").  This is different than failing to follow NEPA's procedures.

And alleging that Jeffrey Solar violated NEPA or that its decision regarding whether to proceed with the project was uninformed is not sufficient.  NEPA "requir[es] *agencies* to undertake analyses of the environmental impact of their proposals and actions."  *Rocky Mountain Peace & Just. Ctr.*, 40 F.4th at 1142 (emphasis added).  Here, there is no discretionary agency action for which Treasury could undertake an EIS or EA.  Jeffrey Solar is the one building the Jeffrey Solar project, and the act of building the project is not subject to Treasury approval.  The only agency action is Treasury's alleged

---

(2008) ("In our adversary system, in both civil and criminal cases, in the first instance and on appeal, we follow the principle of party presentation.  That is, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present.").

failure to require NEPA compliance.  But absent a showing that Treasury made a decision "without following the NEPA's procedures," the Landowners cannot establish an injury in fact.  *Sierra Club*, 287 F.3d at 1265.

Additionally, even if the Federal Defendants failed to follow NEPA's procedures, this failure would need to have "created an increased risk of actual, threatened, or imminent environmental harm."  *Id.*  "Whether an increased risk will or will not occur due to the agency action determines whether a plaintiff has suffered injury in fact . . . ."  *Lucero*, 102 F.3d at 451.  To be sure, "the harm itself need not be immediate," but it must be actual or imminent.  *Rocky Mountain Wild*, 98 F.4th at 1286 (quoting *Sierra Club*, 287 F.3d at 1265).  Here, whatever the assumed instigating role of the Federal Defendants in the conduct of those seeking to benefit from the IRA under Treasury's regulatory scheme, it is Jeffrey Solar's actions—i.e., the future construction of the Jeffrey Solar project—that the Landowners argue creates the increased risk of environmental harm.  *See* Aplts.' Opening Br. at 20 ("[T]he increased risk of environmental harm springs from the construction of those projects without following NEPA's procedure for appropriate environmental review . . . ." (emphasis omitted)).  This conjectural increased risk of environmental harm based on actions at some point in the future lacking discernable imminence is insufficient for purposes of injury in fact in the NEPA context.

Because the Landowners have not shown an injury in fact—one of the three elements that makes up the "'irreducible constitutional minimum' of standing"—they do not have standing to bring their claims against the Federal Defendants or Jeffrey Solar in this case.  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan*, 504 U.S. at

13

560).

## III

For these reasons, we **affirm** the judgment of the district court.

Entered for the Court

Jerome A. Holmes
Chief Judge